## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

| | |
|---|---|
| **United States of America,** | **Criminal No. 07-222 (DWF-JJG)** |
| Plaintiff, | |
| | **REPORT** |
| v. | **AND** |
| | **RECOMMENDATION** |
| **Scott Orris Rolla,** | |
| Defendant. | |

---

JEANNE J. GRAHAM, United States Magistrate Judge

The above-entitled matter came on for hearing before the undersigned Magistrate Judge on September 6, 2007, on the pretrial motions of defendant Scott Rolla. Andrew S. Dunne, Assistant United States Attorney, appeared on behalf of the Government. Daniel B. Mohs, Esq., appeared on behalf of Mr. Rolla (Rolla).

Through motions to suppress evidence from a search and seizure (Doc. Nos. 15, 16), Rolla asserts officers improperly searched his person and his vehicle. And through a motion to suppress statements (Doc. No. 14), Rolla asserts that officers improperly engaged in interrogation in violation of his Fifth Amendment privilege against self-incrimination and his Sixth Amendment right to counsel. These motions are referred to this Court for a report and recommendation in accordance with 28 U.S.C. § 636 and Local Rule 72.1(c).

## I.    BACKGROUND

This prosecution originates from an investigation by Deputy George Pufahl of the Carver County Sheriff's Office. Through an informant, Pufahl learned that Rolla was distributing large quantities of

methamphetamine for sale by other dealers.  Because the informant had always given accurate tips in the past, Pufahl believed the tip was reliable.

Based on this information, Pufahl set up a sting operation on May 17, supplying buy money for the informant.  According to surveillance by other officers on the scene, the informant contacted another "unwitting person."  After giving the buy money to that person, the informant dropped the person off at Rolla's apartment, and picked the person up shortly afterwards.  The unwitting person then gave the informant methamphetamine.  After rejoining Pufahl, the informant explained that the unwitting person had purchased the methamphetamine from Rolla.

Approximately four hours later, Pufahl completed a search warrant application and affidavit.  In the affidavit, he recited the facts regarding the tip and the ensuing sting operation.  A judge signed the warrant, which authorized a search of Rolla's person and apartment.

During this time, other officers kept Rolla's apartment under surveillance.  The record does not indicate when the surveillance began, or whether it had continued since the sting operation.  But it must be inferred that, at some point after the sting operation, Rolla left his apartment.

While Pufahl was on his way back with the search warrant, he received a dispatch from the surveillance team, indicating that Rolla had driven back to his apartment building.  Pufahl directed the officers to intercept and detain Rolla before he entered the building.  Pufahl arrived on the scene about two minutes later.

The record does not indicate the manner in which Rolla was detained.  There were a total of six officers working at the scene, at least some of whom helped to detain Rolla.  Because Rolla is confined to a wheelchair, he moved from his car to the wheelchair at some point.  But he was not placed in handcuffs

and officers did not, at that time, declare that he was under arrest.  There is no evidence that officers unholstered or pointed their firearms in order to detain Rolla.

Once Pufahl arrived, he showed the search warrant to Rolla, and Rolla identified himself.  Pufahl then asked Rolla for permission to search his vehicle, explaining to Rolla that he did not have to consent to this search.  Rolla granted his consent.

At some point during the encounter, officers seized Rolla's wallet.  In his testimony, Pufahl was not certain where the wallet was found, whether it was taken from Rolla's person or was found in his car.  Pufahl did recollect, however, that Rolla handed the wallet to him.  When the wallet was searched, officers found a small amount of methamphetamine.

Though a search of Rolla's car was not authorized by the search warrant, the search warrant return lists the evidence that was seized from Rolla's person and his car.  The return does not include the wallet itself, but it does indicate that some cash, an identity card, drug paraphernalia, and a small amount of methamphetamine was taken from Rolla's person.  It does not show, by comparison, that such items were found in Rolla's car.

From the return, it is reasonable to infer that items taken from his person were the contents of his wallet.  Because the return was completed only four days after the search, it supports Pufahl's recollection that the wallet may have been taken from Rolla himself.

Rolla also gave Pufahl the keys to his apartment, so officers did not have to resort to forcible entry.  In the ensuing search, substantial amounts of contraband were found.  Rolla was transported to the McCloud County Jail.

About two hours after Rolla arrived at the jail, Pufahl took him to a separate interrogation room for questioning. Except for a brief comment, where Pufahl told Rolla he may refuse to talk, the entire interview was recorded. A transcript of this recording is part of the record here. It shows that Pufahl gave Rolla a *Miranda* warning; that Rolla indicated his understanding of the warning; and that Rolla then spoke with Pufahl for about fifteen minutes. Rolla did not invoke his *Miranda* rights during the interview.

## II.  DISCUSSION

### A.    Search and Seizure

At the motion hearing and in subsequent briefing, Rolla chiefly challenged the seizure and search of his wallet. This analysis depends on when and where the wallet was found.

Although Pufahl was not absolutely certain about where the wallet was recovered, he stated that Rolla handed the wallet over. And the search warrant return, which was executed much closer to the time of the seizure, supports a finding that the wallet was taken from his person. Accordingly, this Court finds the wallet was taken from Rolla personally, rather than from his car.

The question of whether the wallet was lawfully seized accordingly turns on whether the search warrant is supported by probable cause. It is not necessary to consider other theories that are premised on the discovery of the wallet in the car, like whether there was probable cause to search the car under the automobile exception, or whether the cab of the car could be searched incident to Rolla's arrest.

#### 1.    Search Warrant

Regarding the search of his person and his apartment, Rolla initially challenges the search warrant, asserting that it is not supported by probable cause. The Fourth Amendment requires that, for a search

warrant to be authorized, a detached and neutral magistrate must find that it is supported by probable cause. *Warden v. Hayden*, 387 U.S. 294, 301-02 (1967).

A search warrant is supported by probable cause when reasonable persons, considering the facts and circumstances alleged in the search warrant affidavit, would find a fair probability that incriminating evidence is on the person or premises to be searched. *Illinois v. Gates*, 642 U.S. 213, 238 (1983). When reviewing the sufficiency of the affidavit, a court only considers the information stated in that affidavit. *United States v. Stevens*, 439 F.3d 983, 987-88 (8th Cir. 2006).

Where officers receive a tip that illegal drugs are being sold from a residence, and the officers promptly corroborate the tip with a successful sting operation, there is a fair probability that illegal drugs will be found on the premises. This probability is bolstered where the tip is from a known, reliable informant. And if a particular person is alleged to be the dealer under the circumstances, the same reasoning is also applicable to a search of that person. *See, e.g., United States v. Oropesa*, 316 F.3d 762, 767-68 (8th Cir. 2003); *United States v. Pennington*, 287 F.3d 739, 742-43 (8th Cir. 2002).

According to the search warrant affidavit here, Pufahl received a tip from a known, reliable informant that Rolla was dealing methamphetamine out of his apartment. Pufahl then set up a sting operation. Officers observed a person going into Rolla's apartment with buy money, and that person later turned over methamphetamine purchased from Rolla there.

These allegations are sufficient to show a fair probability that contraband would be found on Rolla and in his apartment. The search warrant, therefore, is founded on probable cause. Evidence taken from his person or from his apartment need not be suppressed.

2.    **Arrest**

Rolla separately argues that officers did not have probable cause to arrest him and so he was illegally detained. As a technical matter, officers had a search warrant for Rolla's person, but they did not have an arrest warrant. So the encounter here may be treated as a warrantless arrest. This Court will further assume, even though the record suggests the contrary, that Rolla was arrested at the time he was initially detained.

Like the analysis for a search warrant, the standard for a warrantless arrest hinges on probable cause, albeit a slightly different standard. Under the Fourth Amendment, there is probable cause for a warrantless arrest where, according to facts and circumstances known to law enforcement at the time, a prudent person would believe a suspect had committed a crime. *United States v. Adams*, 346 F.3d 1165, 1169 (8th Cir. 2003).

Where the circumstances support a prudent belief that a person is engaged in drug trafficking, officers have probable cause to undertake a warrantless arrest. *United States v. Castro-Gaxiola*, 479 F.3d 579, 583-84 (8th Cir. 2007). As noted in the context of the search warrant analysis, there was ample reason to believe that Rolla was engaged in drug trafficking. These circumstances likewise support probable cause for a warrantless arrest. For this reason, this Court need not reach Rolla's arguments about whether he was lawfully detained incident to execution of the search warrant. *Cf. Michigan v. Summers*, 452 U.S. 692, 705 (1981).

3.    **Consent Search**

Notwithstanding the prior conclusion that the wallet was not found there, Rolla has mounted a distinguishable challenge to the search of his car. The record indicates that methadone was found in it.

Although it is questionable whether this evidence is incriminating, in an abundance of caution, this Court will address whether the car was lawfully searched.

The Fourth Amendment requires officers to acquire a warrant before going forward with a search, subject to limited exceptions. *United States v. Weston*, 443 F.3d 661, 667 (8th Cir. 2006). One such exception is where a person consents to be searched. *United States v. Esquivias*, 416 F.3d 696, 700 (8th Cir. 2005).

Where a person is unlawfully detained and that person gives consent, a two-part analysis is used. *United States v. Perry*, 437 F.3d 782, 785 (8th Cir. 2006). This Court previously concluded, however, that Rolla was lawfully detained. In this scenario, the sole issue is whether the consent was freely and voluntarily given. *See United States v. Jiminez*, 478 F.3d 929, 932 (8th Cir. 2007). The fact that a person is detained, or under arrest, does not determine the issue of voluntariness. *United States v. Fleck*, 413 F.3d 883, 892 (8th Cir. 2005).

When examining whether consent is voluntary, a court looks at all the circumstances. The Government has the burden to show consent. To satisfy this burden, it must show something more than that the defendant acquiesced to officers' claim of authority. *United States v. Sanders*, 424 F.3d 768, 773 (8th Cir. 2005). The consent must be freely given, rather than being the product of express or implied coercion from law enforcement. *United States v. Flores*, 474 F.3d 1100, 1104 (8th Cir. 2007) (quotation omitted).

Several factors are relevant to whether consent is freely and voluntarily given. Some are based on the defendant's characteristics, such as age, general intelligence, sobriety or intoxication, and awareness of rights and protections. Other factors examine external circumstances, such as the length for which the

7

defendant is detained; whether the encounter occurred in a public or secluded place; whether the defendant is in custody or under arrest; and whether officers resorted to coercion or intimidation. *See United States v. Urbina*, 431 F.3d 305, 309 (8th Cir. 2005).

The record here shows that Rolla was alert, and that Pufahl meaningfully informed him that he did not have to consent to a search of his car. Although Rolla was effectively in custody and surrounded by several officers, there is no indication that officers engaged in intimidating or coercive behavior. Rolla was not placed in handcuffs. Taking these circumstances together, they establish that Rolla freely and voluntarily consented to a search of his car. Evidence found there also need not be suppressed.

**B.     Statements**

In his initial moving papers, Rolla asserts two grounds to suppress statements: violation of his privilege against self-incrimination under the Fifth Amendment and his right to counsel under the Sixth Amendment.

The privilege against self-incrimination requires that a suspect, after being taken into police custody, shall receive a *Miranda* warning before being subjected to interrogation. *United States v. Head*, 407 F.3d 925, 928 (8th Cir. 2005). Because Rolla was in jail during Pufahl's interview, there is no reason to dispute that he was in custody. And the record shows that, prior to any significant questioning, Rolla received a *Miranda* warning and understood it. For this reason, his statement was not taken in violation of his privilege against self-incrimination.

The Sixth Amendment right to counsel attaches where a defendant is in adversarial criminal proceedings. *See Scott v. United States*, 473 F.3d 1262, 1264 (8th Cir. 2007). Thus where officers interview the accused prior to the commencement of formal prosecution, that right is not implicated.

8

*United States v. Edelmann*, 458 F.3d 791, 803 (8th Cir. 2006).  That was the case here, so a violation of Rolla's Sixth Amendment right to counsel was not possible.

Assuming that this right did attach, a *Miranda* warning includes an advisory about the right to counsel.  If a person receives and understands the warning prior to being questioned, that person waives the privilege against self-incrimination *and* the Sixth Amendment right to counsel.  *United States v. Garlewicz*, 493 F.3d 933, 936-37 (8th Cir. 2007).  That reasoning is also applicable here.

## III.    CONCLUSION

When officers conducted a search of Rolla's person and his residence, including the seizure and search of his wallet, it was authorized by a warrant founded on probable cause.  Officers also had probable cause to arrest Rolla without a warrant.  While he was in lawful custody, Rolla validly consented to a search of his car.  This Court concludes that his motions to suppress evidence from a search and seizure are appropriately denied.

When Rolla was taken into custody and interviewed, he was given a *Miranda* warning and he understood it.  His subsequent statements were not taken in violation of his privilege against self-incrimination, and his Sixth Amendment right to counsel had not yet attached.  This Court further concludes that his motion to suppress statements should be denied as well.

## IV.    RECOMMENDATION

Being duly advised of all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT:**

1.      Rolla's motions to suppress evidence from a search and seizure (Doc. Nos. 15, 16) be

        **DENIED.**

2.      Rolla's motion to suppress statements (Doc. No. 14) be **DENIED.**

Dated this 26th day of September, 2007.            s/Jeanne J. Graham

JEANNE J. GRAHAM
United States Magistrate Judge

## NOTICE

Pursuant to Local Rule 72.2(b), any party may object to this report and recommendation by filing and serving specific, written objections by October 16, 2007.  A party may respond to the objections within ten days after service thereof.  Any objections or responses filed under this rule shall not exceed 3,500 words.  The district court judge shall make a de novo determination of those portions to which objection is made.  Failure to comply with this procedure shall forfeit review in the United States Court of Appeals for the Eighth Circuit.  Unless the parties are prepared to stipulate that the district court judge is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this report and recommendation, the party making the objections shall timely order and cause to be filed within ten days a complete transcript of the hearing.